Carol BRESNICK, individually and on behalf of all other stockholders of Home Title Guaranty Company, similarly situated, Plaintiff,

v.

HOME TITLE GUARANTY COMPANY, Defendant.

United States District Court
S. D. New York,
July 22, 1959.

Rosston, Hort & Brussel, New York City, for plaintiff, George Brussel, Jr., Eugene G. King, Edward Labaton, New York City, of counsel.

Hodges, Reavis, McGrath & Downey, New York City, for defendant, John P.

McGrath, Martin D. Jacobs, New York City, of counsel.

DAWSON, District Judge.

This is an application for an injunction *pendente lite* to enjoin the defendant, its officers, agents, etc. from executing a group annuity contract providing for a pension plan for certain of the key employees or officers of the defendant, which had been approved by action taken at a meeting of the defendant's directors and authorized at a meeting of the defendant's stockholders on May 19, 1959 and May 20, 1959. The basis of the action is that the proxies solicited by the Company "were procured improperly and unfairly and therefore illegally." The plaintiff seeks to have the pension plan resubmitted to the stockholders.

The papers submitted in support of and in opposition to the motion are thorough and complete. They show that the Company for some time had considered instituting a pension plan for its key employees; that a proposed plan was approved by the Board of Directors, subject to authorization of the stockholders; that a special meeting of stockholders was called for the purpose of taking action upon this proposed plan; that in connection with the stockholder's meeting a proxy statement was furnished which outlined the essential terms of the proposed plan and the cost thereof to the Company; that plaintiffs in the instant action, being substantial stockholders of the corporation, opposed this plan; that under the auspices of these plaintiffs, a committee was organized which was called "Home Title Stockholders Committee" which circularized the stockholders and urged them to submit proxies in opposition to the proposed pension plan. The Management of the Company sent out other letters urging support of the plan.

At the stockholders' meeting, which was held on May 19th and May 20, 1959, a vote was taken. 91,837 shares voted approval of the pension plan and 75,806 shares voted in opposition thereto.

It is not the function of the Court to determine what action should be taken by stockholders of a corporation, nor is it the function of the Court to interfere with the results of the vote taken by stockholders, if the vote was taken fairly and no fraud or misrepresentation was used in solicitation of the votes. Therefore this Court does not have authority to determine whether the proposed pension plan is desirable or in the best interest of the corporation. That was a matter for determination by the directors and stockholders. The only question for the Court to consider is whether the stockholders voted fairly to support the plan, or whether their votes were procured by fraud.

■ Plaintiffs urge that there were omissions and misstatements in defendant's proxy soliciting material which made it impossible for the stockholders to vote intelligently. It apparently is the position of the plaintiffs that any proxy material submitted should, in order to be fair and complete, conform with the requirements laid down by the Securities and Exchange Commission in connection with the solicitation of proxies in support of a pension plan. Plaintiffs concede that the stock of the corporation is not listed on any exchange and that the corporation is not subject to the rules and regulations of the Securities and Exchange Commission, so far as proxy solicitation is concerned. Therefore, the fact that the corporation did not comply with the proxy solicitation rules of the Securities and Exchange Commission is not in itself a basis for invalidating the vote. The Securities and Exchange Commission has successfully blazed a path for more complete and accurate information in connection with corporate solicitations. It was empowered to take such action by legislative authority. This is not to mean that the rules which it has laid down within the scope of that authority are binding on unlisted corporations that are not subject to its supervision. It would scarcely be contended, for example, that the

elections of directors in the thousands of unlisted corporations in this country are invalid because formal proxy statements in the form required by the Securities and Exchange Commission were not used in connection with such elections. Likewise, it can scarcely be contended that an unlisted corporation which sold stock to the public would be subject to actions for rescission because there was not in effect a formal registration statement of the type required by that Commission.

■ The test is not compliance with the technical rules, but rather whether the proxy soliciting material was so tainted with fraud that an inequitable result was accomplished. To determine whether the proxy solicitation material was tainted with fraud it was necessary that the documents be examined. This has been done by the Court. The Court does not find that the documents were tainted by fraud or that the omissions of which plaintiffs complain were such as to make the proxies illegal or ineffective.

It is urged that the proxy soliciting material was improper in that it did not show the specific amount required to finance the past-service benefits of the two chief officers of the corporation. While it is true that the Securities and Exchange Commission would require such information in a proxy statement, it may well be that the standards laid down by that administrative body are higher than those necessarily required for a full and frank disclosure by a corporation. There is no indication from the papers in this case that there was any attempt to mislead on this point. An analysis of the information given by the corporation would have revealed the facts. The facts were fully disclosed in letters sent to stockholders by the committee opposing the plan and there is no indication in the papers that the stockholders were misled by omission to put these particular figures in the Management proxy soliciting material.

Plaintiffs urge that the pension plan was to be in lieu of the additional bonus compensation theretofore paid to key executives of the Company, and that the president of the defendant corporation, Milton T. VanderVeer, now states that he is contemplating the reintroduction of the additional compensation plan in the immediate future. There is no sufficient proof in the papers that either the corporation or its officers are contemplating a resumption of the additional compensation plan in the immediate future. The most that can be said is that Mr. VanderVeer stated that if the earnings of the Company continued to grow over the next five years, so that the rate of dividends could be doubled, the corporation would, at that time, have to consider additional compensation to its employees. This was certainly not inconsistent with the fact that the bonus plan had been terminated and was to be replaced by a pension plan. Such action does not mean that at no time in the future would the corporation consider increased bonus compensation for employees if its earnings should have a greatly increased growth, which at the moment was not an immediate prospect. Plaintiffs have, in the opinion of the Court, taken the statements of Mr. VanderVeer completely out of context and seek to draw an improper inference from a statement which was the normal statement of an officer in expressing his hopes for the future of the company of which he is president.

■ Plaintiffs contend that the corporation letter of May 8, 1959 falsely stated that the Management had proxies of stockholders holding over 54% of the outstanding stock, when the corporation and Mr. VanderVeer knew, or should have known, that a substantial part of the proxies so held had been or might be revoked by proxies subsequently issued to the objecting stockholders committee. The Management did in fact control a very large part of the voting power in practically the amount claimed. The statement of the corporation in its letter of May 8, 1959 was not fraudulent. Continental Bank & Trust Co. of New York v. 200 Madison Ave. Corp. Sup., 43 N. Y.S.2d 402.

726

The other alleged misrepresentations or omissions are not of the kind which would lead the Court to conclude that the proxy soliciting material was fraudulent or that the stockholders were misled.

The campaign for and against the adoption of the pension plan was a vigorous one. Both sides put forth arguments in typical electioneering fashion and anybody who has read the letters, as the Court has done, must reach the conclusion that all of the essential facts were before the stockholders.

Plaintiffs also urge that the failure of the chairman of the stockholders' meeting to put to a vote a motion to adjourn deprived the plaintiffs of an opportunity to present to an adjourned meeting additional facts. The facts shown in the affidavit are sufficient to show that the majority of the stock of the corporation would have been voted by those who were with the Management of the corporation; if the motion to adjourn the meeting had been put (as maybe it should have been) there is no reason to suppose that the result would have been different. The meeting was called to vote upon the pension plan. The motion to adjourn was obviously a stalling tactic on the part of those opposed. It might have been more consonant with parliamentary law to have put the motion to adjourn to a vote; failure to do so, however, was not of such serious import as to deprive the dissenting stockholders of any substantial rights.

The Court concludes that all of the matters which were necessary to a fair presentation of the plan to the stockholders were before the stockholders; that the proxy statement was fair and the proxy soliciting material of the Management was fair; that the meeting called to pass upon the plan had before it all of the facts necessary for a fair determination of the issue by the stockholders; that the stockholders, after hearing the facts, voted in favor of the pension plan.

To enjoin the authorization of the plan at this time would be to deprive the stockholders of the corporation of their democratic right to control the affairs of the corporation and would also interfere with the rights of the corporation employees to a pension to which they are now entitled. Plaintiffs have not submitted sufficient facts to warrant the Court taking this drastic action.

The motion for an injunction *pendente lite* is denied. So ordered.